UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

MODERN PLASTICS CORPORATION,

        Debtor.

_____/

Case No. 09-00651
Hon. Scott W. Dales
Chapter 7

NEW PRODUCTS CORPORATION and
UNITED STATES OF AMERICA,

        Plaintiffs,

v.

THOMAS R. TIBBLE, individually and in his
capacity as Chapter 7 Trustee, and FEDERAL
INSURANCE COMPANY,

        Defendants.

_____/

Adversary Pro. No. 13-80252

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                  Chief United States Bankruptcy Judge

## I.  INTRODUCTION

On July 22, 2015, in Kalamazoo, Michigan, the court heard oral argument on the Defendants' Second Motion for Summary Judgment (the "Motion," DN 118), filed by Thomas R. Tibble, individually and as former trustee of the chapter 7 estate of Modern Plastics Corp. (the "Debtor"), and Mr. Tibble's surety, the Federal Insurance Company.  The Motion is premised on what plaintiff New Products Corporation (the "Plaintiff" or "New Products") characterizes as a challenge to its standing to sue Mr. Tibble and his surety (collectively, the "Defendants") under an assignment from the Debtor's prior lender, Bank of America, N.A. ("BOA" or the "Bank").  For the following reasons, the court will grant the Motion in part, and deny it in part.

## II.  JURISDICTION

The court has jurisdiction over the Debtor's chapter 7 bankruptcy case and authority to enter final judgment in this adversary proceeding for the reasons set forth in its Memorandum of Decision and Order dated December 18, 2014.

The current motion, however, to some extent implicates the court's jurisdiction because it challenges the Plaintiff's standing, and standing is an aspect of jurisdiction.  The party asserting the court's jurisdiction -- here, New Products -- has the burden of proof on the issue.  *In re Parkway Sales and Leasing, Inc.,* 411 B.R. 337 (Bankr. E.D. Texas 2009) ("The party seeking to invoke a federal court's jurisdiction has the burden of proving standing.").  By making this Motion -- the second summary judgment motion in this case -- the Defendants are putting New Products to its burden of establishing standing to sue based on claims it acquired from Bank of America.  To the extent the Plaintiff cannot establish standing in response to the Motion, there is no genuine issue for trial and the court should grant the Motion.

## III.  ANALYSIS

The Motion presents a question that has troubled the court about the Plaintiff's theory of claim from the start of this adversary proceeding.  Last December, during the hearing on the Defendants' first summary judgment motion, the court asked both Mr. Demorest and Mr. Knight a similar question.  As to Mr. Knight, the court inquired:

> THE COURT:  You say they bought the claim.  What claim did they buy?  Was it a contract claim, or did they buy tort claims?
>
> MR. KNIGHT:  Well, they've claimed they bought all the claims of Bank of America, your Honor.
>
> THE COURT:  Okay.

> MR. KNIGHT:  It's their--that's what they said.  And so I would assume that's tort and everything.  That's their position, your Honor.

*See* Transcript of Hearing Held December 13, 2014 ("Tr.") at 17:5-13 (DN 73).  Later during that hearing, the court put the same question to Mr. Demorest:

> THE COURT:  And this has troubled me about this whole thing too, and I think it bears on your measure of damages.  Did you buy tort claims?  Is this a tort claim?  You're saying "You breached your fiduciary duty;" is that a tort claim?  Did you buy a tort claim?  Can tort claims like this be bought and sold?  Or did you buy a right to payment for a million two?
>
> MR. DEMOREST:  What we bought, your Honor, was all of the claims of Bank of America.  And, as you pointed out or as you have said earlier and then Mr. Knight argued, we stand in the shoes of Bank of America.  We don't stand in one of their shoes.  We don't stand, you know, on our tippy-toes in their shoes.  If we're the assignee of Bank of America, we have all the rights of Bank of America.
>
> THE COURT:  Tort, contract, whatever.
>
> MR. DEMOREST:  Indeed.

Tr. at 60:2-16.

Now, after having reviewed BOA's assignment document, the Defendants seek to answer the questions the court struggled with at the December 3, 2014 hearing by pointing to (1) the opinion of the Honorable Robert H. Cleland in *Macomb Interceptor Drainage Dist. v. Kilpatrick,* 896 F. Supp.2d 650 (E.D. Mich. 2012); and (2) the Loan Purchase and Assumption Agreement (the "Assignment") attached as Exhibit 2 to their current motion (DN 118-2).  Defendants argue that although New Products purchased the Bank's contract claims, it did not acquire any tort claims.  Breach of fiduciary duty claims sound in tort, not contract.  Therefore, New Products lacks standing.

New Products, in contrast, argues that it purchased all of BOA's rights based in any way on its status as a secured creditor in this case, whether in tort or in contract, including the right to sue the Defendants for breach of fiduciary duty occurring before or after the Assignment.

In *Macomb Interceptor*, Judge Cleland confronted an argument, similar to the Defendants' argument on this Motion, leveled against a litigant who purchased assets and related contract claims, but who asserted tort and statutory claims against certain defendants, including the former Mayor of Detroit.  In accepting the argument, Judge Cleland noted the dispositive role of the assignment document, and observed that, under Michigan law, "an assignment provision incorporating the language 'rights under all contracts' does not *per se* assign claims or causes of action, but instead assigns only rights and obligations arising under a contract."  *Macomb Interceptor*, 896 F. Supp.2d at 660 (citing Restatement (Second) of Contracts § 328).  In other words, because contract and tort rights are fundamentally different, "the ability of an assignee to enforce contractually-created rights does not necessarily permit the assignee to also bring tort or statutory claims that are merely related somehow to the contractual relationship but that arose outside of the rights created by the contract."  *Id.*

The court finds the *Macomb Interceptor* analysis persuasive and concludes that New Products's standing to enforce tort or non-contractual claims that pre-date the Assignment depends on the language of the assignment document itself -- a matter of straightforward contract interpretation.  *See Macomb Interceptor*, 896 F. Supp.2d at 660-61.  Indeed, at oral argument, New Products's counsel conceded that the question is one of contract interpretation for the court, presumably based on the four corners of the Assignment.

The court has reviewed the Assignment under which New Products claims the right to assert the Bank's pre-assignment breach of fiduciary duty claims, and concludes from the

definitions, language, and structure of that document that the Bank assigned to New Products only the Bank's contract rights *against the Debtor*, not its tort claims, if any, against Mr. Tibble.

To begin, from § 2.1 of the Assignment, it plainly appears that BOA assigned to New Products only the "Loan Documents":

> 2.1  Assignee does hereby purchase and . . . Assignor does hereby sell, assign, transfer and set over to Assignee all the right, title and interest of Assignor in, to and under the Loan Documents (except with respect to Guaranties and the Guarantors), without recourse, representation or warranty of any kind, express or implied, except as set forth in Section 5.

*See* Assignment at § 2.1.  Further, the Assignment defines the term "Loan Documents" to include only the Amended and Restated Loan and Security Agreement dated June 20, 2006 (as amended three times), a promissory note dated February 19, 2008, a mortgage, and an assignment of rents, both dated June 25, 2003.  *See* Assignment at Recital A and Exh. A.  These documents give rise to contractual claims against the Debtor or its property, not Mr. Tibble.

Section 2.3 of the Assignment confirms that the subject matter of the Assignment is limited solely to contract claims against the Debtor under the Loan Documents, because it includes the acknowledgment by New Products that the Bank "is not assigning, transferring or otherwise providing Assignee any rights in or to anything (including the Excluded Assets) other than the Loan and the documents and items specified on Exhibit A." *See* Assignment at § 2.3.

Significantly, although the Assignment expressly recites the pendency of the Debtor's chapter 7 bankruptcy proceeding, it nowhere mentions Mr. Tibble or any claims the Bank may have against him, despite New Products's contention that the claims predated the Assignment.[1]

Against this analysis, New Products's opposition in its response papers hinged almost entirely on the fact that the Loan Documents include a security interest in commercial tort

---

[1] According to the Assignment, the unpaid balance of the Debtor's loan in January 31, 2013 was $1,240,144.02, and Plaintiff paid $225,000.00 to purchase BOA's interest in the Loan Documents.

claims, to which it succeeded under the Assignment.  The argument, however, completely misses the mark for a couple of reasons.

First, and most fundamentally, the "commercial tort claims" referred to in the Loan Documents are obviously claims for injuries *to the Debtor*, not to the Bank.  The Debtor's bankruptcy estate, not the Bank and not New Products, is the only entity entitled to assert the Debtor's commercial tort claims after the Debtor filed its bankruptcy petition.  *See* 11 U.S.C. §§ 323 and 541.  Moreover, BOA never foreclosed its security interest in the supposed commercial tort claims, and therefore never took title to them.  Neither has New Products, as far as the record demonstrates, although its counsel alluded to an unspecified transfer from the Debtor to New Products in the last few days leading up to the hearing.  Pretending to assert "commercial tort claims" does not cure the Plaintiff's standing problem.

Second, neither BOA nor New Products ever had an enforceable security interest in the Debtor's claims against Mr. Tibble, as a matter of state and federal law.  Under the Uniform Commercial Code, the Bank's security interest, which New Products undoubtedly acquired under the Assignment, never became enforceable against the Debtor with respect to the Debtor's after-acquired commercial tort claims such as New Products would now have the court believe it is asserting in this adversary proceeding.  Given the timing of events, any argument premised on commercial tort claims would also have to rely on the after-acquired property clause within the security agreement but, as a matter of law, such clauses do not reach commercial tort claims.  *See* M.C.L. § 440.9204(2)(b) ("[a] security interest does not attach under a term constituting an after-acquired property clause to  . . . a commercial tort claim").  For different reasons, federal law requires a similar conclusion, given that the claims against Mr. Tibble could only have arisen post-petition.  *See* 11 U.S.C. § 552(a).

Moreover, the description of "commercial tort claims" included within the Loan Documents is an inadequate description of collateral under the UCC, so the Bank's security agreement never attached to any commercial tort claims of the Debtor at all. *See* M.C.L. § 440.9203(2)(c)(i) (a security interest is enforceable against an Article 9 debtor and third parties with respect to the collateral only when there is an authenticated security agreement that sufficiently describes the collateral) and M.C.L. § 440.9108(5) (for commercial tort claims, a description only by type of collateral defined in the UCC is an insufficient description).

New Products's other principal argument in favor of its right to assert BOA's claims against the Defendants is premised on Section 2.1 of the Assignment, and New Products's view that tort claims are included within the phrase "all the right, title and interest of Assignor in, to and under the Loan Documents." At the same time, however, its counsel argued that Mr. Tibble owed a duty to BOA and, eventually New Products, under the Bankruptcy Code and common law.

Given that Michigan law recognizes a distinction between legal duties sounding in tort and those sounding in contract, "where an assignment clause does no more than assign rights arising from contracts, it cannot be read to include an assignment of non-contractual claims." *Macomb Interceptor*, 896 F.Supp.2d at 660 (citing *Fultz v. Union–Commerce Assocs.*, 683 N.W.2d 587, 592 (Mich. 2004), *Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647 (Mich. 1997), and *Fox v. Hirschfeld*, 142 N.Y.S. 261, 263 (N.Y. App. Div. 1st Dept. 1913)).

If Mr. Tibble had a duty to BOA or New Products, the duty arose, as Mr. Demorest stated during the hearing, under common law or statute. The common law or statutory origin of that duty, however, reinforces the court's conclusion that the duty is "separate and distinct" from the Debtor's contractual duties under the "Loan Documents." *Fultz, supra.* Loan documents are

inherently contractual in nature, and the court concludes that rights "in, to, and under" the Loan Documents are necessarily contractual, too.

For the foregoing reasons, the Defendants have met their summary judgment burden and put the Plaintiff to the test of establishing standing to assert BOA's tort claims, derivatively under the Assignment.  Based on the court's interpretation of the Assignment, Plaintiff fails as a matter of law.

At the hearing, however, Plaintiff's counsel suggested that, under the "notice pleading" standards applicable in federal court, the First Amended Complaint (DN 15)[2] includes not only claims derived from Mr. Tibble's (alleged) breach of fiduciary duty to BOA, but also a direct claim for his defalcation post-dating the Assignment, which took effect March 4, 2013.

Certainly during the nearly ten months between the execution of the Assignment on March 4, 2013 and the effective date of the abandonment of the Property on January 6, 2014, Mr. Tibble had custody of the Property and a duty directly to New Products as secured creditor.  It is at least conceivable, though not susceptible to easy proofs, that the Property further declined in value during this time on account of Mr. Tibble's alleged misfeasance.[3]  Although New Products's counsel conceded that his client would have a "difficult task" to prove damages post-dating the Assignment, proving damages (or offering evidence of such damages) is a task for another day.

---

[2]Although counsel for New Products declined to characterize the First Amended Complaint as a "supplemental pleading," the document in fact sets out several occurrences or events that happened after the filing of the original complaint.  *See* Fed. R. Civ. P. 15(d) (Supplemental Pleadings).  Even though the Defendants may not have expressly assented to the filing of a supplemental, rather than a merely amended, pleading, they did not challenge the First Amended Complaint on this ground when they answered it, and therefore it will stand as filed.

[3] As the court reads the First Amended Complaint, most of the decline in the value of the Property predated the Assignment, taking place over five years following Mr. Tibble's appointment, which may go a long way to explaining why, in March, 2013, New Products was able to purchase a mortgage securing a claim of more than $1.2 million for only $225,000.00.

## IV. CONCLUSION AND ORDER

Until the argument on this Motion, the thrust of New Products's complaint seems to have been Mr. Tibble's alleged breaches of fiduciary duty pre-dating the Assignment.[4]  By seeking to enforce Mr. Tibble's "liability for events that occurred prior to abandonment," however, the First Amended Complaint does put into issue events, acts, or omissions post-dating the Assignment by about ten months.  *See* First Amended Complaint (DN 15) at ¶ 23.  Under our system of notice pleading, and given the scope of the Motion (which takes aim only at the pre-Assignment claims for relief), the court must deny the Motion with respect to Defendants' liability for post-Assignment acts or omissions and damages.

To summarize, if Mr. Tibble breached his fiduciary duties in connection with the Property during the ten-month period post-dating the Assignment, any resulting injury to New Products would be direct, not derivative.  Therefore, the court's conclusion that New Products obtained only contractual rights against the Debtor under the Assignment would not affect its non-contractual claims against the Defendants arising after the Assignment.  Although (as a practical matter) today's decision may forecast ultimate judgment for the Defendants, a portion of the Plaintiff's case remains viable at least in theory.  Whether the claim will prevail at trial or against a third summary judgment motion filed after the close of discovery remains to be seen.

The court strongly encourages the Plaintiff, before proceeding further, to carefully evaluate the remaining, theoretically viable aspects of its claim, weighing the prospects for

---

[4] For example, one month after executing the Assignment, New Products argued that "[t]he value of the Property has been adversely affected by the Trustee's failure to provide security and failure to maintain the Property (including leaving the windows open)."  *See* Creditor New Products Corporations' [sic] Objection to Motion for Relief from Automatic Stay in Favor of Berrien County Treasurer (Base Case DN 122) at ¶ 7.

success against the mounting expenses. If, after serious reflection, Plaintiff elects to continue prosecuting its claims, the court stands ready to resolve them on further motion or at trial.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Motion (DN 118) is GRANTED to the extent it seeks to preclude Plaintiff from asserting non-contractual claims (including for breach of fiduciary duty) predating the Assignment; and

2. The Motion is DENIED to the extent that it seeks to preclude Plaintiff from asserting claims post-dating the Assignment.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Melissa L. Demorest, Esq., Mark S. Demorest, Esq., John Chester Fish, Esq., Cody H. Knight, Esq., Elizabeth M. Von Eitzen, Esq., Daniel F. Gosch, Esq., Scott Knapp, Esq., Mathew Cheney, Esq., and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated July 23, 2015**



Scott W. Dales
United States Bankruptcy Judge