UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

MODERN PLASTICS CORPORATION,

        Debtor.

Case No. DK 09-00651
Hon. Scott W. Dales
Chapter 7

_____/

NEW PRODUCTS CORPORATION and
UNITED STATES OF AMERICA,

Adversary Pro. No. 13-80252

        Plaintiffs,

v.

THOMAS R. TIBBLE, individually and in his
capacity as Chapter 7 Trustee, and FEDERAL
INSURANCE COMPANY,

        Defendants.

_____/

MEMORANDUM OF DECISION AND ORDER
DENYING POST-TRIAL MOTIONS

I.  BACKGROUND

At the conclusion of New Products Corporation's presentation of its case, and in response to the motion of defendants Thomas R. Tibble and the Federal Insurance Company for judgment on partial findings under Rule 52(c), Fed. R. Civ. P.,[1] the court entered its Findings of Fact and Conclusions of Law After Trial (ECF No. 272, the "Opinion After Trial") and Judgment in an Adversary Proceeding (ECF No. 273, the "Judgment") against New Products.  Within fourteen

_____

[1] In this opinion, the court will refer to any of the Federal Rules of Civil Procedure or Federal Rules of Bankruptcy Procedure simply as "Rule __," relying on the numbering convention in each set of rules to identify the particular rule at issue.  In addition, for convenience, capitalized terms in this opinion shall have the meanings prescribed in the Opinion After Trial.

days after entry of the Judgment, New Products filed the Motion of New Products Corporation for New Trial and to Alter and Amend Judgment (ECF No. 279, the "Rule 9023 Motion").

Shortly thereafter, New Products also filed a document entitled Offer of Proof (ECF No. 280, the "Offer of Proof"), prompting the Defendants to file the Defendants' Motion to Strike Plaintiff's Offer of Proof (ECF No. 283, the "Motion to Strike").

The court issued scheduling orders and, as a courtesy to counsel, enlarged New Products's time for filing various briefs. The Rule 9023 Motion and the Motion to Strike are fully briefed, and the court has decided to resolve them without oral argument. *See* Fed. R. Bankr. P. 1001.

The court will assume familiarity with its Opinion After Trial and its prior rulings in response to various pretrial motions under Rule 56. For the following reasons, the court will deny the Rule 9023 Motion and the Motion to Strike.

## II.  ANALYSIS

### A.    Rule 9023 Motion

The court entered its Judgment in response to the Defendants' motion under Rule 52(c) after concluding that there was no equity in the Property (at any time post-petition) that might have justified Mr. Tibble's spending estate resources to preserve it. In so finding, the court drew on its prior rulings made in response to numerous summary judgment motions under Rule 56 that substantially narrowed the issues to be tried. Arguing, essentially, that the "fix" was in before trial, New Products now seeks an order vacating the Judgment and setting a new trial, presumably to introduce additional evidence detailed in its Offer of Proof.

Motions for reconsideration under Rule 59, made applicable by Rule 9023, are properly regarded as either motions for a new trial, or motions to alter or amend judgment. *Compare* Fed. R. Civ. P. 59(a) *with* Fed. R. Civ. P. 59(e); *see also Feathers v. Chevron U.S.A., Inc.*, 141 F.3d

264, 268 (6th Cir. 1998).  In the prayer for relief at the end of its brief in support of the Rule 9023 Motion, New Products asks for a new trial and for the court to vacate the judgment, rather than amend it.

The standard governing motions for new trial under Rule 59(a) generally requires the movant to show that "the verdict is against the weight of the evidence, the damages are excessive, there is newly discovered evidence, or the trial was otherwise unfair." *In re Quality Stores, Inc.*, 272 B.R. 643, 650 (Bankr. W.D. Mich. 2002) (citations omitted).  Properly read, New Products contends that the court's decision is against the weight of the evidence and that the trial was unfair. The court does not agree.

The clear weight of the evidence established that there was no meaningful value in the Property, given the substantial encumbrances.  Indeed, a pretrial stipulation -- signed by Plaintiff's counsel -- practically established as much.  Unwilling or unable to procure a real estate appraiser to support its view of value, New Products offered an eleventh hour theory based on the scrap value of the metal and other materials removed from the Property.  After carefully considering the Plaintiff's evidence, which did establish significant pre-assignment scrapping activity, the court nevertheless ruled against the Plaintiff.  Even accepting its unusual theory of the Property's valuation, which largely depended on expert testimony that the court rejected at trial, the metal and other materials removed from the building were fully encumbered, so, in any event, their value would not have inured to the bankruptcy estate.  Comparing the value of the liens, which far exceeded the value of the Property, and because no secured party asked for adequate protection of that value, the court found that Mr. Tibble was justified in treating the Property as he did.  In reaching this decision, the court also reiterated its earlier suggestion that precluding recovery under these circumstances "protects the estate and its unsecured creditors from an end-run around the

statutory scheme" of adequate protection. *See* Opinion After Trial at p. 23. In other words, if both secured creditors, BOA and later New Products, failed to see fit to adequately protect their interest, they could hardly expect the Trustee (or, now, the court) to do so at the expense of the unsecured creditors.

Although New Products disagrees with the court on this point, a bankruptcy trustee's primary obligation runs to the estate and the unsecured creditors. Secured creditors have many arrows in their quiver, but the bankruptcy trustee is not one of them. Moreover, secured creditors have a duty to monitor their collateral, a duty that does not evaporate upon the commencement of bankruptcy proceedings. *See Peoples Banking Co. v. Derryberry (In re Peckinpaugh)*, 50 B.R. 865 (Bankr. N.D. Ohio 1985). As the court has noted throughout this proceeding, the bankruptcy concept of "adequate protection" of a secured creditor's interest in non-cash collateral, embodied in statute, requires a secured creditor to take steps to protect itself from post-petition diminution in value due to market factors and even, as here, destruction. *See Volvo Commercial Finance LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 694 (B.A.P. 6th Cir. 2005) (Gregg, J., concurring); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988) (as to adequate protection, "if you don't ask for it, you won't get it"); *First State Bank v. Advisory Info. & Mgmt. Sys., Inc. (In re Advisory Info. & Mgmt. Sys., Inc.)*, 50 B.R. 627, 630 (Bankr.M.D.Tenn.1985) (when a creditor delays making its request for adequate protection, "'the cost of such delay [is] to be borne by the creditor'"). Indeed, as Judge Lundin observed in *Advisory Info. & Mgmt. Sys.*, the Bankruptcy Code precludes a "back door request" for payment from a secured creditor that sits on its rights. *See* 11 U.S.C. § 361(3) (precluding courts from awarding administrative expenses as an *ex post facto* substitute for adequate protection). The evidence admitted during the Plaintiff's presentation of its case established there was not enough value in

the Property to justify an award of adequate protection, let alone a request for such relief. Therefore, the court rejects the Rule 9023 Motion to the extent premised on a contrary view of the weight of the evidence.

The Rule 9023 Motion, however, is also premised on suggestions that the trial was somehow unfair -- one of the grounds for granting a new trial under Rule 59. Certainly, a trial may seem unfair to a litigant who does not accept a court's legal conclusions. Here, in addition to rejecting the court's opinion about the relationship between Plaintiff's claims and adequate protection, New Products fundamentally disagrees with several of the court's pretrial rulings, including the following:  (1) New Products may not assert a claim arising from any breach of duty that Mr. Tibble may have owed to Bank of America;[2] (2) New Products may not assert a breach of fiduciary duty owed to the bankruptcy estate and its unsecured creditors, given the appointment of a successor trustee;[3] and (3) the value of the Property, compared to the valid encumbrances, would largely determine whether Mr. Tibble acted reasonably.[4]  These fundamental disagreements

---

[2] New Products could have bargained to purchase Bank of America's tort claims against Mr. Tibble or the estate, but it did not. Rather, after reviewing the assignment document in response to one of the Defendants' summary judgment motions, the court concluded that New Products purchased only the Bank's claims against the Debtor and its property.

[3] *See* Memorandum of Decision and Order dated December 18, 2014 (ECF No. 69) at p. 19 ("if the court concludes at trial that the Trustee breached only his duty to the unsecured creditors (*i.e.*, to the estate), the court will not permit a single unsecured creditor to enjoy the entire recovery for such injuries, given the derivative nature of an unsecured creditor's injury"). Shortly after this ruling, Mr. Tibble resigned as trustee, implicitly accepting the court's suggestion that he might not be disinterested in light of New Products's claims against him and the estate. Accordingly, the United States Trustee appointed Laura Genovich as his successor, and since her appointment she has participated fully in this adversary proceeding. She is the representative of the estate and the person with standing to sue Mr. Tibble for any breach of duty he owed to the estate during his tenure. *See* 11 U.S.C. § 323; *see also* Fed. R. Bankr. P. 2012(b) and 6009. New Products never sought, and the court never granted, derivative standing. Instead, at several junctures in this proceeding, the court inquired whether the current trustee, Laura Genovich, intended to assert claims against Mr. Tibble for breach of any duty to the estate. She said the estate has no such claims, and as the estate's representative, she makes this determination in the first instance. 11 U.S.C. § 323(a); Fed. R. Bankr. P. 2012(b) and 6009.

[4] The important and dispositive role that the Property's value played in the court's decision could hardly have taken New Products by surprise. Indeed, to prevent surprise, the court suggested that an adverse ruling on value could result in judgment against New Products under Rule 52(c). New Products mischaracterizes the court's reference to Rule 52 as an invitation; it was a warning.

with the court's prior legal rulings should be saved for appeal, and not addressed through a motion to amend findings under Rule 59.

Also suggesting unfairness, New Products argues that the court should not have decided value without hearing from the Defendants' witnesses. Stated differently, New Products is now arguing that the Defendants should have put their case on first. If so, the Plaintiff should not have waited until after the hearing to make this argument, which would have required a departure from the usual presentation of proofs. Moreover, it is not enough simply to argue that the issue of value is in the nature of an affirmative defense -- an argument asserted rather late in the proceedings and never fully developed. In any event, the court addressed the argument when it concluded that, regardless of the locus of the burden of proof, the Plaintiff's own presentation -- indeed, its own stipulation -- persuaded the court that the valid liens greatly exceeded the Property's value. By doing so, the Plaintiff either failed to demonstrate an essential element of its case or, under its own under-developed theory, it successfully established one of the Defendants' defenses. Either way, the case was ripe for the Defendants' Rule 52 motion.

In a similar vein, New Products apparently asserts a right to cross-examine witnesses whom the Defendants never called, as well as a right to cross-examine Mr. Tibble -- whom New Products itself called. There is no unfairness in rejecting these arguments. Just like the Plaintiff, the Defendants have a right to manage their own case. The lack of opportunity for the Plaintiff to cross-examine the Defendants' witnesses would have occurred if, after the Plaintiff's proofs, the Defendants simply rested. By making a Rule 52 motion, this is essentially what they did. The Defendants are not required to provide witnesses at all, let alone to provide witnesses solely to give the Plaintiff an opportunity to cross-examine.

By suggesting that the court unfairly made decisions centered on matters outside the record, New Products ignores the court's authority to draw inferences based on evidence in the record, renewing an argument premised on its mistaken view of a court's role under Rule 52(c) in a bench trial. *See, e.g., Fisher v. Prime Table Restaurant & Lounge, Inc. (In re Lake States Commodities, Inc.)*, 271 B.R. 575, 588 (Bankr. N.D. Ill. 2002) (unlike a motion for directed verdict, a court does not draw inferences in favor of either party under Rule 52(c), but instead weighs the evidence for itself). Almost without exception, everything the court admitted into evidence during the Plaintiff's case in chief came in without objection *and* for all purposes, as the court made quite clear. Indeed, the Defendants' response brief does a good job of marshaling the record citations in support of the court's conclusions. Regardless, Rule 59 is not a platform to correct strategic decisions that a litigant made at trial but has since come to regret.

The court has carefully considered the Rule 9023 Motion, the Defendants' response, and New Products's reply, and sees no reason to set aside the Judgment or conduct a new trial.

B.      Motion to Strike Offer of Proof

The Defendants move to strike New Products's Offer of Proof, arguing that it "is nothing more than an attempt to re-argue already decided matters of law, present new evidence after the close of proofs and to pad the record for an eventual appeal." *See* Motion to Strike at p. 2. In other words, the Defendants are concerned that the Offer of Proof will either affect the decision of this court or a reviewing court.

As explained above, this court will not depart from its prior decisions or in any way change the Judgment, Offer of Proof or no Offer of Proof. Whether the court grants or denies the Motion to Strike, therefore, will have no impact on the outcome of the case at the trial level: the Judgment stands. To the extent the Defendants are concerned about the effect of the Offer of Proof on any

reviewing court, unless the court somehow seals the docket from the appellate court's review, it is difficult to see how granting the Motion to Strike would affect that review either.  Granting the Motion to Strike, in other words, is pointless and inconsistent with appellate review.

Finally, the court's decision to bifurcate the issues for trial -- focusing first on the Property's value and the implications of value on the Trustee's fulfillment of his duties -- arguably distinguishes this case from the authorities the Defendants cite in their Motion to Strike, none of which involved the court's use of its authority under Rule 42(b).  The decision to bifurcate the issues had the effect of limiting the evidentiary presentation more dramatically than the typical situation addressed in the cases the Defendants cite, involving discrete evidentiary rulings in a trial which the court has not limited under Rule 42(b).  In other words, given the court's decision to try the value-related issues first, the Offer of Proof may have greater significance on appeal than in a case such as any upon which the Defendants rely.

For these reasons, the court will deny the Motion to Strike.

## III.  CONCLUSION AND ORDER

Certainly, as the court has already noted, Mr. Tibble could have avoided the aggravation and expense of this proceeding by promptly abandoning the Property, but his failure to abandon the Property while it served as Bank of America's collateral (*i.e.*, before the assignment) did not harm New Products.  And, because the court has concluded that New Products did not succeed to any claims that Bank of America had against Mr. Tibble, New Products lacks standing to assert any such claims (even assuming, contrary to the evidence, their merit).  Finally, given the conclusions the court reached about value, encumbrances, and other issues raised during the trial or in the Defendant's motion for judgment on partial findings, the court perceives no other basis for relief on the merits of the Plaintiff's Amended Complaint.

New Products and its counsel have prosecuted its claims throughout the main bankruptcy case and this adversary proceeding, mostly at undue expense to themselves and others. The litigation is now over, at least in this court. The Plaintiff may seek any necessary correction of the court's supposed errors on appeal if so advised.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.      The Rule 9023 Motion (ECF No. 279) is DENIED; and

2.      The Motion to Strike (ECF No. 283) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Melissa L. Demorest, Esq., Mark S. Demorest, Esq., John Chester Fish, Esq., Cody H. Knight, Esq., Matthew Cooper, Esq., Elizabeth M. Von Eitzen, Esq., Mathew Cheney, Esq., and the United States Trustee.

[END OF ORDER]

**IT IS SO ORDERED.**



**Dated March 14, 2016**

Scott W. Dales
United States Bankruptcy Judge